**WALLICK, Appellant,**

v.

**WILLOUGHBY SUPPLY COMPANY, Appellee.**

[Cite as *Wallick v. Willoughby Supply Co.,* 168 Ohio App.3d 640, 2006-Ohio-4728.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 23053.

Decided Sept. 13, 2006.

Mark A. Ropchock, for appellant.

Ann Marie O'Brien, for appellee.

---

WHITMORE, Judge.

{¶ 1} Plaintiff-appellant, Troy Wallick, has appealed from the judgment of the Summit County Court of Common Pleas, which granted defendant-appellee, Willoughby Supply Company, summary judgment. This court affirms.

I

{¶ 2} On September 14, 2004, appellant filed a complaint for personal injury against Willoughby Supply Company in the Summit County Court of Common Pleas. According to the complaint, appellant was injured on January 14, 2003, when he fell from a roof approximately 20 feet to the ground while delivering shingles pursuant to his employment. The complaint alleged that Willoughby Supply, despite knowing of a dangerous process or condition, required appellant to continue performing the dangerous task without proper safety equipment or training. The complaint alleged that such conduct constituted an intentional tort on behalf of Willoughby Supply. On November 12, 2004, Willoughby Supply answered the complaint. On October 17, 2005, Willoughby Supply filed a motion for summary judgment. On December 15, 2005, appellant filed a brief in opposition to Willoughby Supply's motion for summary judgment. Willoughby Supply filed a reply in support of its motion for summary judgment on January 9, 2006.

{¶ 3} On January 18, 2006, the trial court granted Willoughby Supply's motion for summary judgment.

{¶ 4} Appellant has timely appealed, asserting one assignment of error.

## II

### Assignment of Error No. One

The trial court erred in granting Willoughby Supply's motion for summary judgment.

{¶ 5} In his sole assignment of error, appellant has argued that the trial court improperly granted summary judgment in favor of Willoughby Supply. Specifically, appellant has argued that Willoughby Supply failed in its burden to prove that no genuine issue of material fact existed for trial as to the three elements of the test put forth in *Fyffe v. Jeno's Inc.* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108. We disagree.

{¶ 6} An appellate court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. This court applies the same standard as the trial court, viewing the facts of the case in the light most favorable to the nonmoving party and resolving any doubt in favor of the nonmoving party. *Viock v. Stowe–Woodward Co.* (1983), 13 Ohio App.3d 7, 12, 13 OBR 8, 467 N.E.2d 1378. Pursuant to Civ.R. 56(C), summary judgment is proper if:

(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267.

{¶ 7} The party seeking summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying portions of the record that demonstrate an absence of a genuine issue of material fact as to some essential element of the nonmoving party's claim. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292, 662 N.E.2d 264. To support the motion, such evidence must be present in the record and of the type listed in Civ.R. 56(C). Id.

{¶ 8} Once the moving party's burden has been satisfied, the nonmoving party must meet its burden as set forth in Civ.R. 56(E). Id. at 293, 662 N.E.2d 264. The nonmoving party may not rest upon the mere allegations and denials in the pleadings, but instead must point to or submit some evidentiary material to demonstrate a genuine dispute over the material facts. Id. See, also, *Henkle v. Henkle* (1991), 75 Ohio App.3d 732, 735, 600 N.E.2d 791.

{¶ 9} Pursuant to Civ.R. 56(C):

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

{¶ 10} With the applicable standard of review in mind, we turn our attention to the substance of appellant's contentions.

{¶ 11} The instant matter involves a claim of an employer intentional tort. In *Fyffe*, the Ohio Supreme Court articulated the legal standard by which courts determine whether an employer committed an intentional tort against an employee:

[I]n order to establish "intent" for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task.

Id. at paragraph one of the syllabus. Furthermore, mere knowledge and appreciation of a risk by an employer is not enough to establish intent. *Barger v. Freeman Mfg. Supply Co.*, 9th Dist. No. 03CA008313, 2004-Ohio-2248, 2004 WL 950285, at ¶ 10, citing *Fyffe*, 59 Ohio St.3d 115, 570 N.E.2d 1108, at paragraph two of the syllabus.

{¶ 12} Moreover, in order to establish an intentional tort by an employer, a plaintiff must demonstrate proof beyond that required to prove negligence or recklessness. Id. If a plaintiff can show that harm or consequences will follow the risk, that the employer knows that injuries to employees are certain or substantially certain to result from the risk, and yet the employer still requires the employee to proceed, the employer is treated by the law as if he had in fact desired the end result. See id.

{¶ 13} This court has held that it is the element of substantial certainty that differentiates negligence from an intentional tort. *Marks v. Goodwill Industries of Akron, Ohio, Inc.* (Mar. 27, 2002), 9th Dist. No. 20706, 2002 WL 462864, at *2, citing *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 116, 522 N.E.2d 489. According to this court in *Marks*, "[t]he line must be drawn where ' "the known danger ceases to be only a foreseeable risk which a reasonable person would avoid, and becomes in the mind of the [employer] a

substantial certainty." ' " *Marks*, at *2, quoting Prosser & Keeton, Law of Torts (5th Ed. 1984) 36, Section 8.

{¶ 14} When determining intent, "this Court proceeds on a case-by-case basis and considers the totality of the circumstances." Id. Concerning substantial certainty, we have stated:

> Some of the relevant facts and circumstances which support the conclusion that an employer's knowledge that harm to the employee was a substantial certainty include, but are not limited to: prior acts of a similar nature, the employer's concealment or misrepresentations concerning the danger, and federal and/or state safety violations or noncompliance by the employer with industry safety standards.

Id.

{¶ 15} We begin the analysis by noting that the *Fyffe* test is a conjunctive test. That is, all three elements must be established in order to maintain a prima facie case of an intentional tort by an employer. It follows, therefore, that if there remains no genuine issue of material fact as to one of the elements, discussion of the other elements becomes moot. See *Pintur v. Republic Technologies Internatl., L.L.C.*, 9th Dist. No. 05CA008656, 2005-Ohio-6220, 2005 WL 3117199, at ¶ 11 (finding the issue of substantial certainty dispositive and not addressing the other *Fyffe* elements). Accordingly, since we find it to be dispositive in the instant matter, we begin our discussion with the substantial-certainty prong.

{¶ 16} The gist of appellant's argument hinges on the fact that delivering shingles to snow- and ice-covered roofs is dangerous work. This court agrees. However, "dangerous work must be distinguished from an otherwise dangerous condition within that work. It is the latter of which that must be within the knowledge of the employer before liability could attach." *Naragon v. Dayton Power & Light Co.* (Mar. 30, 1998), 3d Dist. No. 17–97–21, 1998 WL 142386, at *7. "Were it otherwise, any injury associated with inherently dangerous work * * * could subject an employer to intentional tort liability, whatever the cause." Id.

{¶ 17} This court has held that while "prior similar accidents are one factor to consider in the substantial certainty analysis, * * * '[t]he absence of prior accidents strongly suggests that injury from this procedure was not substantially certain to occur.'" *Harris v. Bekaert Corp.*, 9th Dist. No. 05CA0056, 2006-Ohio-1487, 2006 WL 786531, at ¶ 21, quoting *Thomas v. Barberton Steel & Iron, Inc.* (Apr. 1, 1998), 9th Dist. No. 18546, 1998 WL 150374, at *3. There is no dispute that Willoughby Supply had not had a similar fall incident in its 22–year history. Appellant has conceded that the absence of prior similar incidents strongly suggests that the injury was not substantially certain to occur in *general*

employer intentional tort cases. It is within the context of working at elevated heights that appellant has asked this court to alter our analysis.

{¶ 18} Appellant has cited cases from other appellate districts for the proposition that the "risk of fall is so great when working at elevated heights, that substantially certain injury can occur even in the absence of prior injury." For instance, appellant relies heavily on the decision of the Second Appellate District in *Busch v. Unibilt Industries, Inc.* (Sept. 22, 2000), 2d Dist. No. 18175, 2000 WL 1369891. In *Busch*, the Second District held that "the harm resulting from a fall is a substantial certainty because of the very nature of the causes which produce a fall, the lack of prior experience notwithstanding." Id. at *4, citing *Emminger v. Motion Savers, Inc.* (1990), 60 Ohio App.3d 14, 572 N.E.2d 257; *Dirksing v. Blue Chip Architectural Prods., Inc.* (1994), 100 Ohio App.3d 213, 653 N.E.2d 718; *Reese v. Euclid Cleaning Contrs., Inc.* (1995), 103 Ohio App.3d 141, 658 N.E.2d 1096. Appellant has specifically relied on *Busch's* elegant, but histrionic analysis:

> So long as the Earth rotates on its axis, the law of gravity is certain. While the law of gravity prevails, it is also certain that an unsupported object will fall until its travel is interrupted by some object or surface below. When the falling object is a human being, harm resulting from the fall is a substantial certainty, depending on (1) the height from which the fall takes place and (2) the hazard presented by the surface or objects below.

Id. at *3. We think the above analysis misses the point in that *Busch* and cases in the same vein presume a fall. *Busch* and similar cases stand for the proposition that if an employee is working at elevated heights, and he falls, he is substantially certain to be injured. However, we think the correct analysis is whether an employee working at elevated heights *is substantially certain to fall* and be injured if exposed to the dangerous process, procedure, instrumentality, or condition.

{¶ 19} *Fyffe's* second prong requires "knowledge by the employer that *if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition,* then harm to the employee will be a substantial certainty." (Emphasis added.) *Fyffe*, 59 Ohio St.3d 115, 570 N.E.2d 1108, at paragraph one of the syllabus. We do not dispute that it is substantially certain that a human being who falls off a roof will be subject to the laws of gravity and will plummet until something stops that fall. However, we do dispute that a human being who is working on a roof without a harness is substantially certain to fall in the first place.

{¶ 20} Accepting appellant's arguments and the case law cited would require this court to accept the suggestion that the true meaning of *Fyffe's* second prong is that an employee who is subjected to a dangerous condition by virtue of his employment, in this case, walking on snow-covered roofs without fall-protection

equipment, is substantially certain to be harmed. This court declines to adopt the position that just because an employee is exposed to heights in the scope of his employment, whether in inclement weather or temperate, that it is substantially certain that he will fall and injure himself.

{¶ 21} Further, the record indicates that appellant was an experienced roof walker who considered himself "really good" at his job. Appellant testified that he had walked hundreds of roofs during the winter months. Appellant testified that he thought he had good footing and that he felt safe. Appellant testified that he had made seven or eight trips up to the roof that day prior to slipping on the ice. See *Foust v. Magnum Restaurants, Inc.* (1994), 97 Ohio App.3d 451, 455, 646 N.E.2d 1150, and *Crnarich v. United Foundaries*, 7th Dist. No. 02CA128, 2003-Ohio-4458, 2003 WL 21998490, at ¶ 26 (both noting that performing a procedure hundreds of times or more without incident is indicative of a lack of substantial certainty).

{¶ 22} Although it is the opinion of this court that the foregoing analysis is at the heart of the substantial-certainty prong of *Fyffe*, we must also note that the cases cited by appellant are factually distinguishable from the matter sub judice. Specifically, appellant has ignored the facts present in *Busch* that demonstrated that the employer was aware of and appreciated the heightened risk and resultant injury complained of. In *Busch*, there was significant evidence of multiple prior accidents which occurred under similar circumstances. In fact, one employee testified that "falls were not uncommon." *Busch* at *3. In *Emminger*, the employer had previously been cited for OSHA and OAC safety violations. In *Dirksing*, the employer had a history of OSHA violations and one such violation contributed to the accident. In *Reese*, the employer failed to inspect the safety equipment it provided, while knowing that the employee would be using it to secure himself at elevated heights.

{¶ 23} The critical difference between appellant's cited authority and the instant case is that all four cited cases provide clear examples of an employer formulating the requisite intent to justify an intentional tort. There is no such evidence in the record before us. Mere knowledge and appreciation of a risk does not constitute intent. *Pintur* at ¶ 11, citing *Fyffe*, 59 Ohio St.3d 115, 570 N.E.2d 1108, at paragraphs one and two of the syllabus.

{¶ 24} In support of its contention that appellant's injury was not a substantial certainty, Willoughby Supply has also pointed to its compliance with OSHA regulations concerning rooftop delivery of roofing materials. Willoughby Supply has argued that OSHA does not require the use of fall protection (lanyards, harnesses) unless an anchorage point is already available on the roof. Willoughby Supply is correct in this assertion.

{¶ 25} In a standard interpretation dated November 30, 2004, OSHA's Directorate of Construction interpreted STD 03–00–001, which set forth fall-protection standards regarding working on roofs for those involved in residential construction. First, it must be noted that OSHA conceded that the rooftop delivery of roofing materials was not one of the activities covered by STD 03–00–001. Therefore, the fall-protection regulations contained therein did not apply to rooftop delivery. The interpretation went on to detail OSHA's policy regarding the rooftop delivery of roofing materials, which had been in place since 1995:

> [OSHA] will not require the vendor's employees to install an anchorage point for fall protection [when distributing roofing materials] regardless of the slope of the roof or the fall distance. However, if an anchorage point is already available on the roof, the employees must use fall protection equipment.

Neither party has contended that the roof in question contained a preexisting anchorage point.

{¶ 26} In his brief in opposition to summary judgment, appellant argued that the state of Ohio had determined that Willoughby Supply violated specific safety regulations of the Ohio Administrative Code. Appellant cited Exhibit B of his brief in opposition. Exhibit B is an investigation report of the Ohio Bureau of Workers' Compensation ("BWC"), Safety Violations Investigative Unit, dated May 3, 2004. The report, however, appears to be incomplete. The report is not signed by the special investigator, nor is it initialed by a supervisor. Further, Exhibit B is missing its exhibits, namely, affidavits of persons involved in the accident and documentation submitted by Willoughby Supply in its defense.[1] What is left for our review is a two-page document that summarizes the affidavits of the witnesses and a cover page that ambiguously lists the codes cited as Ohio Adm.Code 4121:1–3–03(C)(J)(L), 4121:1–3–09(E)(F)(1)(H), 4121:1–5–02(D)(E), and 4121:1–5–17(I)(6)(7).[2]

{¶ 27} This court concludes that Exhibit B is insufficient to establish that BWC found that Willoughby Supply violated the aforementioned sections of the Ohio Administrative Code. First, Exhibit B is clearly an incomplete document. Second, nowhere in Exhibit B is it stated that Willoughby Supply violated the listed safety provisions of the Code. Finally, it is important to note that even if Exhibit B was a complete document, it is an investigative report, not a formal citation. Further, the record does not include any such formal citation by BWC.

---

**1.** One of the missing exhibits is a copy of an OSHA Interpretation regarding fall protection for rooftop delivery submitted by Willoughby Supply. We assume that this missing document is similar to the one we discuss in ¶ 25.

**2.** The provisions of Ohio Adm.Code Chapter 4121 are now contained in Chapter 4123.

{¶ 28} This court cannot interpret Exhibit B to mean that Willoughby Supply was cited for the listed safety violations. Nor can we conclude that Willoughby Supply was cited at all for any safety violations given the record before us. We must note, however, that Ohio Adm.Code 4123:1–3 concerns construction and 4123:1–5 concerns workshops and factories. Section 4123:1–3–01 provides the definitions and scope for the chapter and does not include rooftop delivery of roofing materials as an activity covered by the chapter. Specifically, Ohio Adm.Code 4123:1–3–01(A) describes "construction" as:

[T]he demolition, dismantling, excavation, construction, erection, alteration, repair, painting, decorating, glazing, cleaning, and pointing of buildings and other structures and the installation of machinery or equipment and all operations in connection therewith; the excavation, construction, alteration and repair of subways, sewers, tunnels, trenches, caissons, conduits, pipelines, roads and all operations pertaining thereto; the moving of buildings, signs, and other structures, and to the construction, alteration, repair, or removal of wharfs, piers, abutments, or any other construction, alteration, repair, or removal work carried on, in, about, or over water.

Likewise, rooftop delivery of roofing materials is not included within the scope of Ohio Adm.Code 4123:1–5.

{¶ 29} There is no evidence in the record that Willoughby Supply was not in compliance with OSHA's policy regarding the rooftop delivery of roofing materials. Nor is there any evidence that Willoughby Supply violated applicable state safety regulations.

{¶ 30} Accordingly, because the record lacks evidence of federal or state safety violations, noncompliance by the employer with industry safety standards, or prior, similar incidents, this court cannot conclude that Willoughby Supply knew that appellant's exposure to height and adverse weather conditions would be substantially certain to result in harm.

{¶ 31} Based on the foregoing, we conclude that Willoughby Supply demonstrated an absence of genuine issues of material fact as to the substantial-certainty element of the *Fyffe* test. Further, we conclude that appellant failed to meet his reciprocal burden under *Dresher* to establish a genuine issue of material fact concerning *Fyffe*'s substantial-certainty element.

{¶ 32} Appellant's sole assignment of error lacks merit.

### III

{¶ 33} Appellant's sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

Boyle, J., concurs.

Slaby, P.J., concurs in judgment only.