OPINION
{¶ 1} Appellants, William A. Fleming, et al., appeal from the decision of the Portage County Court of Common Pleas granting summary judgment to appellees, A.A.S. Service, Inc., et al. For the reasons discussed below, we affirm in part, reverse in part and remand the matter for further proceedings. *Page 2 
 {¶ 2} Beginning in 2002, appellant William Fleming started as a part-time employee of appellee A.A.S. Service, Inc. (AAS) as a subcontractor assisting with painting jobs. In 2003, Mr. Fleming became a full-time employee assisting with, inter alia, chimney cleaning and repair. Mr. Fleming had no prior experience with chimneys but was given "on the job" training by appellee Urs Schneeberger, the owner and employee of AAS. In July of 2005, AAS, through Mr. Schneeberger and Mr. Fleming, visited the one-story home of Keith and Shannon Mamajek to examine their chimney and provide an estimate for its repair. The Mamajek's subsequently signed a contract with AAS for the repair work.
 {¶ 3} Mr. Schneeberger and Mr. Fleming arrived at the Mamajek home at approximately 8:00 a.m. on August 9, 2005. They worked on the chimney for several hours without incident. After finishing the chimney repairs, Mr. Fleming commenced cleaning the roof top. He was the only person on the roof during the cleaning process. While cleaning, Mr. Fleming had rinsed the roof with a water hose and placed larger pieces of mortar and other debris in a 3-5 gallon bucket which also contained flashing seal.
 {¶ 4} While he was completing the cleaning process, Mr. Fleming noticed the bucket began to slide down the slope of the roof. At the time, he testified the roof was dry and the roof was clear of debris. Mr. Fleming was unable to explain why the bucket began its descent; however, he testified that Mr. Schneeberger explicitly advised him never to chase any equipment or tool from a roof. If equipment begins to fall, "[i]t happens, but you just don't go after it. You let it fall, go down and pick it up. If it's *Page 3 
broke, it's just broke. Better it than you is the philosophy that I was taught from [Mr. Schneeberger]." Mr. Fleming even acknowledged in his complaint that "the cardinal rule when working on a roof is not to chase a tool that slides off the roof."
 {¶ 5} Despite Mr. Schneeberger's explicit training and instructions, Mr. Fleming darted after the bucket "at a full run." He testified he had heard voices from below and was concerned that the falling debris would fall and strike one of the Mamajeks who had been outside in their backyard. As he pursued the bucket, he dodged a vent stack on the roof and swatted at the bucket to change its direction. At this point, however, Mr. Fleming had reached the roof line and, rather than attempt to stop, decided to leap off the edge of the roof and attempt to land safely in the grass. Unfortunately, Mr. Fleming landed on the Mamajek's concrete driveway injuring his leg and foot. Although the bucket tumbled off the roof with Mr. Fleming, the Mamajeks were not harmed. In fact, Shannon Mamajek testified she and her two daughters were between 18 and 20 feet from the roof at the time of the incident. Mr. Fleming repeatedly testified he did not fall from the roof but, rather, jumped of his own free will and, at no point did Mr. Schneeberger advise him to act as he did.
 {¶ 6} On May 15, 2006, appellants filed their complaint in the Cuyahoga County Court of Common Pleas alleging negligence against the Mamajeks, intentional tortious conduct on behalf of AAS and Mr. Schneeberger, and loss of consortium. After filing their answer, the cause was transferred to the Portage County Court of Common Pleas. On December 22, 2006, the Mamajeks filed their motion for summary judgment to which appellants responded on January 17, 2007. On March 19, 2007, AAS and Mr. *Page 4 
Schneeberger filed their motion for summary judgment to which appellant's duly responded. On March 21, 2007, the trial court granted summary judgment in the Mamajeks' favor. Later, on July 12, 2007, the trial court awarded summary judgment in AAS' and Mr. Schneeberger's favor. Appellant's filed a timely appeal and now assign three errors for our review.
 {¶ 7} Appellant's first assignment of error alleges:
 {¶ 8} "The trial court erred in granting summary judgment to Keith and Shannon Mamajek."
 {¶ 9} We review a trial court's decision to grant summary judgment de novo. Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 105, 1996-Ohio-336. Summary judgment is appropriate under Civ. R. 56(C) when (1) there is no genuine issue of material fact remaining to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence in favor of the nonmoving party, that conclusion favors the moving party. Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327.
 {¶ 10} The moving party bears the initial burden of providing the trial court a basis for the motion and is required to identify portions of the record demonstrating the absence of genuine issues of material fact pertaining to the non-moving party's claim. Dresher v. Burt,75 Ohio St.3d 280, 293, 1996-Ohio-107. The burden then shifts to the non-moving party to set forth specific facts that would establish a genuine issue for trial. Id. The moving party cannot discharge its initial burden under Civ. R. 56 simply by *Page 5 
making a blank assertion that the nonmoving party has no evidence to prove its case but must be able to specifically point to some evidence of the type listed in Civ. R. 56(C). Dresher, supra. Similarly, the non-moving party may not rest on conclusory allegations or denials contained in the pleadings; rather, he or she must submit evidentiary material sufficient to create a genuine dispute over material facts at issue. Civ. R. 56(E); see, also, Dresher, supra.
 {¶ 11} To determine whether a genuine issue exists, a reviewing court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must necessarily prevail as a matter of law. Spatar v. Avon OaksBallroom, 11th Dist. No. 2001-T-0059, 2002-Ohio-2443, at ¶ 16, citingTurner v. Turner, 67 Ohio St.3d 337, 340, 1993-Ohio-176. "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."Anderson v. Liberty Lobby, Inc. (1986), 477 U.S. 242, 248.
 {¶ 12} Under their first assignment of error, appellants argue Keith and Shannon Mamajek, the owners of the home off which Mr. Fleming leapt, were negligent in creating a dangerous condition when Mrs. Mamajek remained in her backyard with her children while Mr. Fleming was on their roof repairing the chimney. Appellant contends "[w]ith the grinding of the mortar and debris flying everywhere, along with the presence of the ladder, by being in the backyard the Mamajeks were in harm's way." We disagree with appellants' argument. *Page 6 
 {¶ 13} To defeat the Mamajek's motion for summary judgment, it was necessary for appellants to identify a duty owed them by the Mamajeks which was breached. Fuehrer v. Bd. of Educ. of Westerville City SchoolDist. (1991), 61 Ohio St.3d 201, 204. In Michaels v. Ford MotorCo., 72 Ohio St.3d 475, 478, 1995-Ohio-142, the Supreme Court of Ohio underscored that an owner of property where construction is taking place may only be held liable for the injuries of an independent contractor's employees if the owner actively participates in the details of a contractor's work, e.g., where "the owner `interfered with themode of the job operation,' `actually participated in the job operationby dictating the manner and mode in which the * * * job was to be performed,' and `had sole control over the safety features necessary to eliminate the hazard.'" (emphasis sic.) Id., quoting, Hirschback v.Cincinnati Gas Elec. Co. (1983), 6 Ohio St.3d 206, 208. The phrase "actively participates" has been defined as directing the activity which resulted in the injury and/or giving or denying permission for the critical acts that led to the employee's injury as opposed to merely exercising a general supervisory role over the project. Bond v. HowardCorp., 72 Ohio St.3d 332, 337, 1995-Ohio-81.
 {¶ 14} Appellants assert a genuine issue of material fact exists in this case to the extent the Mamajeks were "in their backyard" when Mr. Fleming's injury occurred. Appellants allege Mr. Fleming's actions which led to his injuries were undertaken pursuant to the rescue doctrine and, as a result, there remains triable issues as to whether the Mamajeks were comparatively negligent for the injuries.
 {¶ 15} First, there is no evidence in the record indicating the Mamajeks "actively participated" in the construction job so as to impose a duty of reasonable care upon *Page 7 
them. Even if Mrs. Mamajek and her children were in the backyard at the time of Mr. Fleming's injury, they were not directing the manner in which he was cleaning the roof. The record simply indicates the Mamajeks hired AAS to repair their chimney and allowed it to do its job in a manner it saw appropriate. From these facts, it would be difficult to conclude the Mamajeks were engaging in even a "general" or "passive" supervisory role. The Mamajeks did not interfere with the contractor's mode of job operation; they did not actually participate in the job via dictating the manner it would be accomplished; and they had no input, let alone control, over safety features necessary to eliminate the potential hazard. In short, appellants have failed to establish the Mamajeks owed Mr. Fleming a duty of reasonable care which they breached causing appellant's injury.
 {¶ 16} Further, appellants' contention that issues of fact remain as to comparative negligence assumes, at the least, they established a breach of duty on behalf of the Mamajeks. They did not. Comparative negligence is a legal concept related to proximate causation. See, e.g.,Armstrong v. Best Buy, Co., 99 Ohio St.3d 79, 81, 2003-Ohio-2573. It is axiomatic that, absent the establishment of a duty and a breach thereof, a court need not examine the issue of proximate causation. Appellants' argument therefore misunderstands the necessary sequence of proof in a negligence cause of action.
 {¶ 17} Further, appellant's argument relating to the rescue doctrine also assumes what still needs proven; namely, negligence on behalf of the Mamajeks. The "rescue doctrine" is applicable when an injured party is hurt in an attempt to rescue a person in *Page 8 
danger as a result of that person's own negligence. Skiles v.Beckloff (Aug. 4, 1993), 9th Dist. No. 93CA005550, 1993 Ohio App. LEXIS 3824, *2-*3, citing Reese v. Minor (1981), 2 Ohio App.3d 440. Hence, it follows that a rescuer may only recover from one found negligent. By alleging that there are genuine issues of material fact as to appellant's role as a rescuer, he presumes the Mamajek's negligence, a conclusion which requires its own separate proof.
 {¶ 18} For these reasons, appellant's first assignment of error is without merit.
 {¶ 19} Appellant's second assignment of error alleges:
 {¶ 20} "The trial court erred in failing to find Ohio Revised Code 2745.01 unconstitutional."
 {¶ 21} Under their second assignment of error, appellants assert the current version of R.C. 2745.01 (eff. April 7, 2005) is unconstitutional because it essentially mirrors former R.C. 2745.01 which was declared unconstitutional in Johnson v. BP Chemicals, Inc., 85 Ohio St.3d 298,1999-Ohio-267. We hold appellants' constitutional challenge has merit.
 {¶ 22} Current R.C. 2745.01, which governs causes of action premised upon employer intentional torts, provides, in relevant part:
 {¶ 23} "(A) In an action brought against an employer by an employee * * * for damages resulting from an intentional tort committed by the employer during the course of employment, the employer shall not be liable unless the plaintiff proves that the employer committed the tortious act with the intent to injure another or with the belief that the injury was substantially certain to occur. *Page 9 
 {¶ 24} "(B) As used in this section, `substantially certain' means that an employer acts with deliberate intent to cause an employee to suffer an injury, a disease, a condition, or death."
 {¶ 25} The foregoing statute is the only recourse for an employee whose employer has committed an intentional tort.
 {¶ 26} Current R.C. 2745.01 had two statutory predecessors, both of which were respectively declared unconstitutional by the Supreme Court of Ohio. First, in 1986, the General Assembly enacted former R.C. 4121.80. Under this statute, injuries occasioned by an employer's intentional tort fell under the rubric of Ohio's Workers' Compensation Act and permitted an injured employee to seek damages for employer intentional torts committed in the course of the employee's employment. Id., generally. Under former R.C. 4121.80(G), an intentional tort was defined in the same manner as current R.C. 2745.01, i.e., "an act committed with the intent to injure another or committed with the belief that the injury is substantially certain to occur." R.C. 4121.80(G). The former statute further provided "`[substantially certain' means that an employer acts with deliberate intent to cause an employee to suffer injury, disease, condition, or death." Id.
 {¶ 27} In Brady v. Safety-Kleen Corp. (1991), 61 Ohio St.3d 624, the Supreme Court of Ohio analyzed former R.C. 4121.80 in relation to Sections 34 and 35, Article II of the Ohio Constitution. Section 34, Article II of the Ohio Constitution provides "[l]aws may be passed fixing and regulating the hours of labor, establishing a minimum wage, and providing for the comfort, health, safety and general welfare of allemploye[e]s; and *Page 10 
no other provision of the constitution shall impair or limit this power." (Emphasis added.) Moreover, the opening sentence of Section 35, Article II, which provides a basis for legislative enactments in the area of workers' compensation, states: "[f]or the purpose of providing compensation to workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such workmen'semployment * * *." (Emphasis added.) The Court, seizing upon the foregoing, emphasized language, determined former R.C. 4121.80 exceeded and conflicted "with the legislative authority granted to the General Assembly pursuant to Sections 34 and 35, Article II of the Ohio Constitution" and therefore deemed it unconstitutional. Id. at paragraph two of the syllabus.
 {¶ 28} In relation to Section 34, the Court held that the statute acted to confer a functional immunity to employers and, consequently, "was totally repugnant to Section 34, Article II." Brady, supra, at 633. The Court reasoned a statute that attempts to remove a common law right to a remedy that would generally benefit an employee cannot be a law "providing for the comfort, health, safety and general welfare of all employees." Id. Section 34, Art. II of the Ohio Constitution. See, also,Brady, supra, at 633-635.
 {¶ 29} With respect to Section 35, the court underscored that "the legislature cannot, consistent with Section 35, Article II, enact legislation governing intentional torts that occur within the employment relationship because such intentional tortious conduct will always take place outside that relationship." Brady, supra, at 635. The court, quoting a previous case, elaborated: *Page 11 
 {¶ 30} "`Injuries resulting from an employer's intentional torts, even though committed at the workplace, are utterly outside the scope of the purposes intended to be achieved by Section 35 of the Act. Such injuriesare totally unrelated to the fact of employment. When an employer intentionally harms his employee, that act effects a complete breach of the employment relationship, and for purposes of the legal remedy for such an injury, the two parties are not employer and employee, but intentional tortfeasor and victim." (Emphasis sic.) Brady, supra, at 633, quoting, Taylor v. Academy Iron Metal Co. (1988),36 Ohio St.3d 149, 162 (Douglas, J., dissenting.)
 {¶ 31} The court pointed out that Section 35 is concerned solely with compensating employee injuries arising from the employment relationship. However, the statute concerned itself solely with injuries which, by their very nature, have no connection with the fact of employment.Brady, supra. Thus, the Court held "the legislature cannot, consistent with Section 35, Article II, enact legislation governing intentional torts that occur within the employment relationship, because such intentional tortious conduct will always take place outside that relationship." Brady, supra. The statute was therefore held unconstitutional in toto thereby reanimating the common law cause of action for an employer's intentional tortious conduct.
 {¶ 32} Subsequent to Brady, the General Assembly enacted former R.C. 2745.01 (eff. Nov. 1, 1995) to replace former R.C. 4121.80. However, the new statute encountered similar and equally fatal constitutional problems to those encountered by former R.C. 4121.80. As a result, inJohnson v. BP Chemicals, Inc, supra, it was *Page 12 
declared unconstitutional. Former R.C. 2745.01(D)(1) set forth the elements of the cause of action, stating:
 {¶ 33} "`Employment intentional tort' means an act committed by an employer in which the employer deliberately and intentionally injures, causes an occupational disease of, or causes the death of an employee."
 {¶ 34} Further, the statute required the employee to prove by clear and convincing evidence that the employer deliberately committed all of the elements of an employment intentional tort. See former R.C. 2745.01
(C)(1).
 {¶ 35} In light of these requirements, the Court in Johnson determined that former R.C. 2745.01 "created a cause of action that is simply illusory." Johnson, supra, at 306. That is, pursuant to the standards of the statute, "an employer's conduct, in order to create civil liability, must be both deliberate and intentional. Therefore, in order to prove an intentional tort in accordance with [former] R.C. 2745.01(D)(1), the employee * * * must prove, at a minimum, that the actions of the employer amount to criminal assault. In fact, given the elements imposed by the statute, it is even conceivable that an employer might actually be guilty of a criminal assault but exempt from civil liability under [former] R.C. 2745.01(D)(1)." Johnson, supra, at 306-307. In relation to this analysis, the Court held former R.C. 2745.01 violated Section 34, Article II of the Ohio Constitution; to wit, "[b]ecause [former] R.C. 2745.01 imposes excessive standards (deliberate and intentional act), with a heightened burden of proof (clear and convincing evidence), it is clearly not `a law that furthers the "* * * comfort, health, safety and general welfare of all employees."'" Johnson, supra, at 308. *Page 13 
 {¶ 36} The Court also cited its Section 35 analysis in Brady as a basis for its holding. The Court pointed out that Section 35, Article II grants the legislature authority to enact laws regarding injuries occasioned within the employment context and, therefore, Section 35 precludes the enactment of any law affecting injuries outside the scope of employment. Johnson, supra, at 308. Thus, citing Brady, the court additionally held "[former] R.C. 2745.01 `cannot logically withstand constitutional scrutiny, inasmuch as it attempts to regulate an area that is beyond the reach of constitutional empowerment.'"Johnson, supra, citing Brady, supra, at 634.[1]
 {¶ 37} Current R.C. 2745.01 (effective April 7, 2005) represents the latest attempt by the legislature to regulate causes of action alleging employer intentional torts occurring within the course of an employee's employment. Current R.C. 2745.01 provides that in an action for intentional tort "committed by the employer during the course of employment," an employee must prove that "the employer committed the tortious act with the intent to injure another or with the belief that the injury was substantially certain to occur." The belief that an injury is substantially certain to occur exists when the employer "acts with deliberate intent to cause an employee to suffer an injury, a disease, a condition, or death." R.C. 2745.01(B).
 {¶ 38} We initially point out that all legislative enactments enjoy a strong presumption of constitutionality. Groch v. GMC,117 Ohio St.3d 192, 196, 2008-Ohio-546. *Page 14 
Moreover, where possible, courts must apply all presumptions and all pertinent rules of construction in an effort to uphold a statute challenged on constitutional grounds. See, e.g., Johnson, supra, at 303.
 {¶ 39} We first emphasize that a comparison of former R.C. 4121.80 and current R.C. 2745.01 reveals the legislature retained the same substantive standard of proof found unconstitutional in Brady. This standard of proof was stricken as "totally repugnant" to and therefore violative of Section 34, Article II of Ohio's constitution. Moreover, notwithstanding the legislature's subsequent decision to codify the cause of action outside the Ohio's Workers' Compensation Act, the Court in Johnson determined that former R.C. 2745.01 stood in violation of Section 35, Article II. As discussed above, the Court construed Section 35 as an explicit limitation upon the legislature's constitutional powers, i.e., the Constitution only permits the General Assembly to regulate causes of action occurring within the employmentrelationship and, therefore, it does not possess the constitutional authority to codify legislation governing employee injuries which fall outside this relationship.
 {¶ 40} After careful review of controlling case law in this area, we hold current R.C. 2745.01 cannot pass constitutional scrutiny. Current R.C. 2745.01 cannot be coherently reconciled with the manner in which Sections 34 and 35, Article II of Ohio's Constitution have been construed by the Supreme Court. Current R.C. 2745.01 is another attempt by the General Assembly to enact legislation governing intentional torts occurring within the employment relationship which, according to the Supreme Court in *Page 15 Brady and Johnson, stands contrary to Section 35, Article II of the Ohio Constitution. See Brady, supra, at 635; see, also, Johnson, supra, at 308.
 {¶ 41} Moreover, under the current statute, an employer's conduct must be either intentional or deliberately intentional. As the court inJohnson pointed out, these requirements "are so unreasonable and excessive that the chance of recovery of damages by employees for intentional torts committed by employers in the workplace is virtually zero. * * * [This] `creates an insurmountable obstacle for victims of "employment intentional torts."'" Id. at 307. By requiring an employee to demonstrate his employer acted with an "intent to injure" or "with the belief that the injury was substantially certain to occur" (i.e., acting with "deliberate intent" to injure), creates an unreasonably high standard of proof which does not provide for the "comfort, health, safety and general welfare of all employes * * *." Brady, supra, at 633.
 {¶ 42} The instant issue has not been broached by the great balance of our sister districts. However, our research reveals that the Seventh Appellate District has ruled on the constitutionality of current R.C. 2745.01 and, in doing so, has arrived at the same conclusion as this panel. In Kiminski v. Metal Wire Products Company, 7th Dist. No. 07-CO-15, 2008-Ohio-1521, the Seventh District recently held current R.C. 2745.01 unconstitutional in pursuant to Brady and Johnson. In support of its holding, the court in Kiminski reasoned:
 {¶ 43} "R.C. 2745.01, as currently written, is similar to the earlier version found by the Johnson Court to be unconstitutional. R.C. 2745.01(A) provides that in an employer intentional tort action, the employee must prove `that the employer committed *Page 16 
the tortious act with the intent to injure another or with the beliefthat the injury was substantially certain to occur.' Thus pursuant to section A, in order to succeed on the claim, the employee must prove one of two things: (1) the employer acted with intent to injury or (2) the employer acted with the belief that injury was substantially certain to occur. This leads one to believe there are two alternate ways for an employee to succeed on an intentional tort claim against the employer. However, we must consider the rest of the statute.
 {¶ 44} "`Intent to injure' is clear and, therefore is not defined in the statute. `Substantially certain,' however, is not as clear. Therefore the legislature provided a definition. R.C. 2745.01(B) defines substantially certain as, acting `with deliberate intent to cause an employee to suffer an injury, a disease, a condition, or death.'
 {¶ 45} "When we consider the definition of `substantial certainty' it becomes apparent that an employee does not have two ways to prove an intentional tort claim as R.C. 2745.01(A) suggests. The employee's two options of proof become (1) the employer acted with intent to injure or (2) the employer acted with deliberate intent to injure. Thus, under R.C. 2745.01, the only way an employee can recover is if the employer acted with the intent to cause injury. The Johnson Court held that this type of action was simply illusory * * *
 {¶ 46} "* * *
 {¶ 47} "Pursuant to the Ohio Supreme Court's holdings inBrady, supra, and Johnson, supra, and consistent with Sections 34 and35, Article II of the Ohio Constitution, we must conclude R.C. 2745.01
is unconstitutional. Because of its *Page 17 
excessive standard of requiring proof that the employer intended to cause injury, `it is clearly not "a law that furthers the `* * * comfort, health, safety and general welfare of all employe[e]s.'"'Johnson, [supra] at 308, quoting Brady, [supra], at 633, quoting Section 34, Article II of the Ohio Constitution. Additionally, `because R.C. 2745.01 is an attempt by the General Assembly to govern intentional torts that occur within the employment relationship, R.C. 2745.01
"cannot logically withstand constitutional scrutiny, inasmuch as it attempts to regulate an area that is beyond the reach of constitutional empowerment."' Id. quoting Brady, [supra], at 634." Kiminski, supra, at ¶ 29-31 and ¶ 34.
 {¶ 48} We therefore hold, pursuant to Brady, Johnson, as well as the supplemental persuasive analysis set forth in Kiminski, current R.C. 2745.01 is unconstitutional, standing in violation of Sections 34 and35, Article II of the Ohio Constitution. As a result, the common law standard set forth in Fyffe v. Jeno's, Inc. (1991), 59 Ohio St.3d 115 is again the viable standard of proof for an employee seeking redress for an employer's allegedly intentional tortious conduct.
 {¶ 49} Appellant's second assignment of error is therefore sustained.
 {¶ 50} Appellants' third assigned error reads:
 {¶ 51} "The trial court erred in granting summary judgment to defendants A.A.S. Service, Inc. and Urs Schneeberger." *Page 18 
 {¶ 52} Although we have found current R.C. 2745.01 unconstitutional, we shall review the trial court's decision by applying the common law test for employer intentional torts set forth in Fyffe, supra.[2]
 {¶ 53} In Fyffe, the Supreme Court of Ohio announced the test for an employer intentional tort as follows:
 {¶ 54} "[I]n order to establish `intent' for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task. * * *." Id. at paragraph one of the syllabus.
 {¶ 55} To establish an intentional tort by an employer, an employee must demonstrate proof beyond that required to prove negligence or recklessness. Id., at paragraph two of the syllabus. "If a plaintiff can show that harm or consequences will follow the risk, that the employer knows that injuries to employees are certain or substantially certain to result from the risk, and yet the employer still requires the employee to proceed, the employer is treated by law as if he had in fact desired the end *Page 19 
result." Wallick v. Willoughby Supply Co., 168 Ohio App.3d 640,2006-Ohio-4728, at ¶ 12, citing Fyffe, supra.
 {¶ 56} Here, after the Mamajek's chimney repair had concluded, Mr. Fleming was on top of the roof cleaning off remaining dust and debris. He had used a water hose to remove most of the brick dust and placed other larger debris in a 3 gallon bucket. Neither Mr. Fleming nor the bucket was secured by a safety harness or a rope. Mr. Fleming testified he observed the bucket begin to slide down the roof and attempted to prevent it from falling. Mr. Fleming then:
 {¶ 57} "caught [the bucket] maybe three feet or so from the edge of the roof, but for me, that's one stride. I have a six-foot stride. So for me to get three feet away, I had one more step left and I was over.
 {¶ 58} "So the bucket had already gotten to the point where it was headed to the right and Mrs. Mamajek and her daughters were below me. I could hear them, but I couldn't see them where I was because they were small enough that I had no clue where exactly they were. And when the bucket started to slide, normally I would just let it slide to the bottom, but with people down there, I wasn't sure where they were so I tried to head it off and stop it from going off the roof.
 {¶ 59} "When it started sliding, I said `shit' and I started running immediately after it. I caught it, and like I said, I don't remember where I was on the roof by the time I actually got within arm's reach of the bucket, and I reached down, kind of hit it as hard as I could to the left because, like I said, I could hear them to the right, so I figured anything left was my best bet, and it just kind of went right in line with me and we both — *Page 20 
I was at a full run at that point, so stopping was out of the question. I had no way to stop, and I just — — my only out was to jump.
 {¶ 60} "So I tried to jump as far as I could in case they were under me, and as I was going over, I just kind of saw movement on the right, and the bucket hit the ground and I was just hoping there was grass under me and there wasn't. After that, I just hit the ground. I knew as soon as I hit the ground I broke my leg."
 {¶ 61} The record indicates that although Mr. Fleming heard the Mamajeks, they were not near the house at the time of the fall. Mrs. Mamajek testified she was standing approximately 18 feet away from the corner of the house at the time of the fall while her daughters were behind her, approximately 20 feet from the house. Moreover, Mr. Fleming's boss, appellee-Schneeberger was not on the roof at the time appellant chased the bucket and jumped from the roof. Further, Mr. Fleming conceded that Mr. Schneeberger did not direct him to retrieve the bucket and his decision to chase the bucket and ultimately leap from the roof were done of his own volition.
 {¶ 62} We begin the analysis by pointing out that the elements ofFyffe are conjunctive and a plaintiff must establish a genuine issue of material fact relating to all three prongs of the test to avoid summary judgment. See, e.g., Wallick, supra, at ¶ 15. To satisy the first prong of the test, the plaintiff must demonstrate there was a dangerous process and the employer had actual knowledge of the consequences of the precise dangers which ultimately caused the injury. See, e.g.,Hubert v. Al Hissom Roofing and Constr., Inc., 7th Dist. No. 05 CO 21,2006-Ohio-751, at ¶ 18. "[D]angerous work must be distinguished from an otherwise dangerous condition within that work. It *Page 21 
is the latter of which that must be within the knowledge of the employer before liability could attach." Naragon v. Dayton Power Light Co.
(Mar. 30, 1998), 3d Dist. No. 17-97-21, 1998 Ohio App. LEXIS 1531, *19. "Were it otherwise, any injury associated with inherently dangerous work * * * could subject an employer to intentional tort liability, whatever the cause." Id.
 {¶ 63} Here, the job in which Mr. Fleming engaged on a daily basis, i.e., roof work, can be reasonably construed as dangerous work. The condition within such dangerous work which Mr. Fleming identifies as dangerous, separate from the work itself, was Mr.Schneeberger's failure to provide safety equipment. O.A.C. 4123:1-3-03(J)(1) requires an employer to provide and compel his or her employees to use lifelines, safety belts or harnesses, and lanyards on "steeply pitched roofs" and "when exposed to hazards of falling where the operation being performed is more than six feet above ground * * *." Although this section of the O.A.C. does not provide a grade for defining a "steep pitch," it is undisputed that the Mamajek's roof line was eleven feet five inches. With this in mind, we agree with Mr. Fleming that he was exposed to a dangerous condition for purposes of Fyffe and that Mr. Schneeberger had knowledge of this dangerous condition.
 {¶ 64} During his deposition, Mr. Fleming testified Mr. Schneeberger neither provided nor required him to use safety equipment while executing his job duties in general, let alone at the Mamajek residence. Mr. Fleming stated he told Mr. Schneeberger "several times" they needed to obtain safety equipment but Mr. Schneeberger's response was "you can either do it or go home." Moreover, Mr. *Page 22 
Schneeberger acknowledged no safety equipment was provided at the Mamajek job and he only provided the same when the roof was "too steep" pursuant to his own subjective determination. Given these facts, Mr. Fleming established a genuine issue of material fact as to whether Mr. Schneeberger had knowledge of the dangerous condition to which Mr. Fleming was subjected. Accordingly, appellants have met their burden under Fyffe's first prong.
 {¶ 65} The second prong of Fyffe requires a plaintiff to demonstrate the employer was substantially certain that an employee would be injured if exposed to the dangerous condition. Courts have acknowledged thatFyffe's second element "is a difficult standard to meet." McGee v.Goodyear Atomic Corp. (1995), 103 Ohio App.3d 236, 246; see, also,Hubert, supra, at ¶ 33. In Fyffe, the Court stated:
 {¶ 66} "To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases and the employer knows that injuries to employees are certain or substantially certain to result from the process procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk — something short of substantial certainty — is not intent." Id. at paragraph two of the syllabus. *Page 23 
 {¶ 67} Under Fyffe, an employee is not required to show that an employer subjectively intended the injury at issue to prove intent. SeeHubert, supra, at ¶ 35; see, also Van Fossen v. Babcock WilcoxCo. (1988), 36 Ohio St.3d 100, 117. Rather, evidence indicating an employer knew that subjecting an employee to a dangerous condition would, with substantial certainty, cause an injury is sufficient to show intent.
 {¶ 68} During his deposition, Mr. Fleming testified that Mr. Schneeberger seemed to expect him to fall and be injured during the course of his duties at some point:
 {¶ 69} "He asked me daily, `What are you going to do when you fall and get hurt and break your leg?'
 {¶ 70} "I can't tell you how many times I heard that. But how do you answer that? When you're not in that situation, it's like, `I'll be fine. If it happens, it happens.' That's all I could say. I've never been in any kind of situation like that.
 {¶ 71} "But he asked me all the time. I'd be up there or we'd be driving somewhere, `What are you going to do one of these days when you fall down and get hurt,' almost like he was wishing it to happen. And I didn't think about it too much then. But now in hindsight, if you knew it was going to happen to me, why did you not do anything about it?"
 {¶ 72} The foregoing testimony, viewed in conjunction with Mr. Fleming's testimony that Mr. Schneeberger did not offer him (let alone require him to wear) safety equipment while on a rooftop, creates a genuine issue of material fact as to whether Schneeberger knew that harm to Mr. Fleming was substantially certain to result from the *Page 24 
dangerous condition. Thus, we hold appellants met their burden as it relates to the second prong of Fyffe.
 {¶ 73} Finally, the third prong of Fyffe requires proof that "the employer, with knowledge of a dangerous condition and of a substantial certainty of harm, [had] required the employee to perform a dangerous task." Hannah v. Dayton Power Light Co., 82 Ohio St.3d 482, 486,1998-Ohio-408. In analyzing this element, the Supreme Court has held that an employer need not explicitly require an employee to perform a dangerous task.
 {¶ 74} "Instead, to overcome a motion for summary judgment, an opposing party can satisfy this requirement by presenting evidence that raises an inference that the employer, through its actions and policies, required the [plaintiff] to engage in that dangerous task." Id., at 487.
 {¶ 75} As discussed under our analysis of the first element ofFyffe, O.A.C. 4123:1-3-03(J)(1) requires an employer to provide and to take responsibility for his or her employees use of specific safety equipment on "steeply pitched roofs" or "when exposed to hazards of falling where the operation being performed is more than six feet above ground * * *." One can reasonably infer that an employee, exposed to the perils of falling from a height greater than six feet above ground, is involved in a dangerous task. Slack v. Henry, 4th Dist. No. 00CA2704, 2000-Ohio-1945, 2000 Ohio App. LEXIS 6336, *14. (holding, "[f]ailure to comply with safety regulations is relevant to show that an employer required an employee to perform a dangerous task, knowing of the substantial certainty of the injury.") We therefore hold that there are genuine issues of material fact *Page 25 
as to Fyffe's third element, viz., whether Mr. Schneeberger, with knowledge of a dangerous condition and of a substantial certainty of harm, required Mr. Fleming to continue to perform a dangerous task.
 {¶ 76} As a post script to the foregoing analysis, we recognize the trial court's holding was premised upon its view that the "dangerous task" in this case was Mr. Fleming's pursuit of the bucket down the slope of the Mamajek's roof. While we agree with the trial court that there is no evidence in the record indicating that Mr. Schneeberger instructed Mr. Fleming to place himself in peril to retrieve equipment which, in his judgment, was sliding from a roof to protect people who may or may not be standing below. In fact, the opposite is true. Mr. Fleming testified Mr. Schneeberger actively discouraged pursuing a tool or equipment which was or in the process of falling from a roof. However, we do not believe the issue in this case was whether Mr. Fleming's specific voluntary actions caused his injury; rather, underFyffe, the thrust of the inquiry is whether there are genuine issues of material fact that Mr. Schneeberger, through his policies and conditions of employment, placed Mr. Fleming in a position where he was subjected to a dangerous condition and harm was substantially certain to follow.Gibson v. Drainage Products, Inc., 95 Ohio St.3d 171, 2002-Ohio-2008, ¶ 27. Given our reading of the law in this area, we believe Mr. Fleming has presented sufficient evidence on the foregoing requirements to create an issue for trial.
 {¶ 77} Appellants' third assignment of error is therefore sustained.
 {¶ 78} While we overrule appellants' first assignment of error, their second and third assignments of error are hereby sustained. The judgment of the Portage County *Page 26 
Court of Common Pleas is therefore affirmed in part, reversed in part, and the matter remanded for further proceedings.
MARY JANE TRAPP, J., concurs,
TIMOTHY P. CANNON, J., concurs in part, dissents in part, with Concurring/Dissenting Opinion.
[1] The Court acknowledged that the new numerical statutory designation placed former R.C. 2745.01 outside the Workers' Compensation Act (R.C. Chapter 4123.); however, the court evidently did not believe former R.C. 2745.01 was outside the purview of the authority delimited under Section 35, Article II. Moreover, it noted, by way of comparison, the new statute was enacted with the same purpose as former R.C. 4121.80, i.e., "to shield employers from civil liability for employee injures caused by the intentional tortious conduct of the employer."Johnson, supra, at 305, f.n. 9.
[2] Even though Mr. Fleming's injury occurred after April 7, 2005, thereby triggering the elements set forth in current R.C. 2745.01, the trial court, whether through accident or divination, applied the proper common law test set forth Fyffe.