[Cite as *Abdou v. Ohio Dept. of Agriculture*, 2020-Ohio-6937.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Amgad William Abdou, M.D. et al., | : | |
| Plaintiffs-Appellants, | : | |
| | | No. 19AP-633 |
| v. | : | (Ct. of Cl. No. 2018-00520JD) |
| Ohio Department of Agriculture, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on December 29, 2020

**On brief:** *Reminger Co., L.P.A., Brian C. Lee*, and *Marianne Barsoum Stockett*, for appellants. **Argued:** *Brian C. Lee.*

**On brief:** *Dave Yost*, Attorney General, *William C. Becker*, and *Stacy Hannon*, for appellee. **Argued:** *William C. Becker.*

APPEAL from the Court of Claims of Ohio

DORRIAN, J.

{¶ 1} Plaintiffs-appellants, Amgad William Abdou, M.D. ("Dr. Abdou"), and Albair Guirguis (collectively, "appellants"), appeal the August 19, 2019 decision and judgment entry of the Court of Claims of Ohio granting summary judgment in favor of defendant-appellee, Ohio Department of Agriculture ("ODA"). For the following reasons, we affirm.

**I. Facts and Procedural History**

{¶ 2} This matter arises out of a 2011 incident in which Dr. Abdou suffered severe injuries resulting is his being rendered quadriplegic. On May 29, 2011, Dr. Abdou attended a friend's birthday party at the Pump-It-Up Party Center in Avon, Ohio ("Pump-It-Up"). Dr. Abdou ran through one of Pump-It-Up's rides called the "Chaos," which was an inflatable obstacle course, the objective of which was for two participants to compete against one another in a race to make it through the obstacle course. Employees of Pump-

It-Up did not provide Dr. Abdou with any instructions or warnings before he entered the obstacle course. Dr. Abdou did not view a mandatory safety video and instead went directly into the ride, successfully completing the obstacle course twice. On his third time through the obstacle course, Dr. Abdou went headfirst down a slide while racing another participant. As a result of this, Dr. Abdou hit his head and suffered severe injuries which rendered him quadriplegic.

{¶ 3} On March 23, 2018, Dr. Abdou and Guirguis, Dr. Abdou's brother who was acting in his capacity as Dr. Abdou's power of attorney, filed a complaint against ODA in the Court of Claims alleging ODA was negligent in its inspection, licensing, and regulation of Pump-It-Up.[1] In their complaint, appellants alleged ODA performed inspections at least annually on Pump-It-Up's inflatable rides, including the Chaos, from 2004 through 2011. In 2004, the manufacturer of Chaos issued a safety information notice requiring the Chaos only be operated when a mandatory safety wedge was added to the base of the slide where Dr. Abdou was injured. Appellants alleged ODA was aware of this safety information notice.

{¶ 4} Appellants alleged that the former owners of Pump-It-Up had installed the safety wedge. However, in 2010, prior to the sale of Pump-It-Up, the former owners discarded the safety wedge, along with all safety notices, bulletins, recalls, and manufacturer requirements. On the date of Dr. Abdou's injury, the new owners of Pump-It-Up did not have the safety wedge installed in the Chaos. Appellants alleged Dr. Abdou's injuries would have been prevented if the safety wedge had been installed.

{¶ 5} Appellants alleged that ODA was aware the safety wedge was not installed; yet, knowingly approved, certified, licensed, authorized, and sanctioned the operation and use of the Chaos without the safety wedge. Appellants alleged ODA also represented that critical safety documentation, including the safety information notice requiring use of the mandatory safety wedge, could be discarded after two years. Furthermore, appellants alleged ODA failed to create and/or implement certain policies related to inspections, including records retention policies, inspection criteria policies, document tracking policies, and policy standards to minimize known risks. As a result, appellants asserted a

---

[1] The complaint indicates this was a refiled complaint. According to ODA, appellants voluntarily dismissed the earlier case in March 2017.

claim of negligence against ODA and alleged that ODA and/or its employees acted recklessly and maliciously.

{¶ 6} On April 23, 2018, ODA filed an answer. On February 27, 2019, ODA filed a motion for summary judgment. On April 15, 2019, appellants filed their brief in opposition to summary judgment. On August 19, 2019, the Court of Claims filed a decision and judgment entry granting ODA's motion for summary judgment.

## II. Assignments of Error

{¶ 7} Appellants appeal and assign the following three errors for our review:

[I.] The Court of Claims incorrectly granted ODA summary judgment finding that Dr. Abdou's claims were barred by a public duty immunity.

[II.] The Court of Claims incorrectly granted ODA summary judgment finding that Dr. Abdou's claims were barred by discretionary immunity.

[III.] The ODA's construction of R.C. 2743.02 is unconstitutional as applied to the facts of this case.

## III. Applicable Law

{¶ 8} R.C. 2743.02, enacted as part of the Court of Claims Act, operates to limit the sovereign immunity of the state Ohio. *Reynolds v. State Div. of Parole & Community Servs.*, 14 Ohio St.3d 68, 70 (1984). Under R.C. 2743.02, individuals can, subject to certain exceptions, sue the state and have liability determined with the same rules applicable to suits between private parties. *Id.*

## A. Public Duty Immunity

{¶ 9} R.C. 2743.02(A)(3)(a) provides that "the state is immune from liability in any civil action or proceeding involving the performance or nonperformance of a public duty." Thus, R.C. 2743.02(A)(3)(a) provides " 'an exception to the state's waiver of sovereign immunity, as set forth in R.C. 2743.02(A)(1),' " for those activities which are statutorily classified as a public duty. *Banks v. Ohio Bur. of Workers' Comp.*, 10th Dist. No. 17AP-748, 2018-Ohio-5246, ¶ 12, quoting *Burr v. Ohio State Hwy. Patrol*, 10th Dist. No. 12AP-26, 2012-Ohio-4906, ¶ 19. As relevant here, " '[p]ublic duty' includes, but is not limited to, any statutory, regulatory, or assumed duty concerning any action or omission of the state involving any of the following: * * * [p]ermitting, certifying, licensing, inspecting,

investigating, supervising, regulating, auditing, monitoring, law enforcement, or emergency response activity."  R.C. 2743.01(E)(1)(a). *See Vos v. Ohio Environmental Protection Agency*, 10th Dist. No. 17AP-749, 2018-Ohio-2956, ¶ 12.

{¶ 10}  However, the public duty immunity provided in R.C. 2743.02(A)(3)(a) does not apply "to any action of the state under circumstances in which a special relationship can be established between the state and an injured party." R.C. 2743.02(A)(3)(b).  A party establishes a "special relationship" with the state pursuant to R.C. 2743.02(A)(3)(b) by demonstrating that "all of the following elements" are met:

> (i) An assumption by the state, by means of promises or actions, of an affirmative duty to act on behalf of the party who was allegedly injured;
>
> (ii) Knowledge on the part of the state's agents that inaction of the state could lead to harm;
>
> (iii) Some form of direct contact between the state's agents and the injured party;
>
> (iv) The injured party's justifiable reliance on the state's affirmative undertaking.

**B. Discretionary Immunity**

{¶ 11}  In addition to the public immunity doctrine, the state's limitation on its sovereign immunity provided under R.C. 2743.02 is also constrained by discretionary immunity. Under the discretionary immunity doctrine, "the state cannot be sued for its legislative or judicial functions or the exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion." *Reynolds* at paragraph one of the syllabus. "However, once the decision has been made to engage in a certain activity or function, the state may be held liable, in the same manner as private parties, for the negligence of the actions of its employees and agents in the performance of such activities." *Id.*

**IV. Standard of Review**

{¶ 12}  We review a grant of summary judgment under a de novo standard. *Capella III, LLC v. Wilcox*, 190 Ohio App.3d 133, 2010-Ohio-4746, ¶ 16 (10th Dist.), citing *Andersen v. Highland House Co.*, 93 Ohio St.3d 547, 548 (2001). "[D]e novo appellate review means that the court of appeals independently reviews the record and affords no deference to the trial court's decision." (Internal quotations and citations omitted.) *Holt v. State*, 10th Dist.

No. 10AP-214, 2010-Ohio-6529, ¶ 9. Summary judgment is appropriate only when the moving party demonstrates: (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997). In ruling on a motion for summary judgment, the court must resolve all doubts and construe the evidence in favor of the non-moving party. *Premiere Radio Networks, Inc. v. Sandblast, L.P.*, 10th Dist. No. 18AP-736, 2019-Ohio-4015, ¶ 6.

{¶ 13} Pursuant to Civ.R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record demonstrating the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). If the moving party fails to satisfy its initial burden, the court must deny the motion for summary judgment; however, if the moving party satisfies its initial burden, summary judgment is appropriate unless the non-moving party responds, by affidavit or otherwise as provided under Civ.R. 56, with specific facts demonstrating a genuine issue exists for trial. *Id.*; *Hall v. Ohio State Univ. College of Humanities*, 10th Dist. No. 11AP-1068, 2012-Ohio-5036, ¶ 12, citing *Henkle v. Henkle*, 75 Ohio App.3d 732, 735 (12th Dist.1991).

## V. Assignments of Error

### A. First Assignment of Error—Public Duty Immunity

{¶ 14} In their first assignment of error, appellants assert the Court of Claims erred by finding public duty immunity barred their claims against ODA.

{¶ 15} In its decision, the Court of Claims noted that appellants pointed to "evidence that [ODA] knew of the mandatory safety bulletin and the need for the safety wedge but nonetheless licensed the Chaos for operation in 2011 despite the missing wedge." (Decision at 5.) Further, the court noted appellants' evidence that ODA "failed to document certain aspects of its inspection" and ODA's inspector's instruction "to Pump It Up employees to discard documentation more than 2 years old as well as its failure to inform Pump It Up's new management of the need for the safety wedge." Although the court found that such evidence "might establish several ways in which [ODA] and/or its inspectors were negligent," it also found that "this same evidence establishes that all of these acts/or

omissions were related to [ODA's] conduct in inspecting, licensing and/or regulating the Chaos." (Decision at 6.)  Thus, in the absence of any special relationship between appellants and ODA, the court found public duty immunity under R.C. 2743.02(A)(3)(a) applied to bar appellants' claims as a matter of law.

{¶ 16}  On appeal, appellants do not contest the actions of ODA employees related to inspecting and licensing are covered by public duty immunity.  Nor do they assert a special relationship existed between appellants and ODA such that public duty immunity would not apply.  Instead, appellants assert the Court of Claims erred in applying public duty immunity to bar their claims because public duty immunity does not encompass "policy and protocol that may impact how the act of inspecting or licensing should be performed." (Appellants' Brief at 35.) Appellants argue that such policies and protocols should not be analyzed under the public duty provisions of R.C. 2743.02(A)(3) but, rather, the common law doctrine of discretionary immunity.  Appellants argue that "[a]s legislative and judicial functions have nothing to do with decisions that may be made by an ODA inspector in inspecting or licensing a ride, the trial court's interpretation that protocol and public decisions constitute 'public duty' is without merit." (Appellants' Brief at 42.)

{¶ 17}  In support of their arguments, appellants first point to a case from the Court of Claims, *Edwards v. Ohio Dept. of Transp.*, Court of Claims No. 2014-00553, 2016-Ohio-5221. In that case, the court examined claims relating to the failure of the Ohio Department of Transportation ("ODOT") to maintain a ditch abutting the plaintiff's property. The court found that "maintenance of the ditch at issue does not fall within the definition of public duty contained in R.C. 2743.01(E)(1)—i.e., it does not concern permitting, certifying, licensing, inspecting, investigating, supervising, regulating, auditing, monitoring, law enforcement, or emergency response activity." *Id.* at ¶ 35.  Therefore, the court concluded public duty immunity did not apply.

{¶ 18}  Next, appellants point to *Risner v. Ohio Dept. of Transp.*, 145 Ohio St.3d 55, 2015-Ohio-4443, ¶ 11. In *Risner*, the Supreme Court of Ohio examined whether ODOT could be subject to liability arising from its decisions on improving public highways. The Supreme Court concluded that ODOT's decisions to improve a particular portion of an intersection, its decision not to improve other portions of the intersection, and its decision regarding what type of improvement to make were all protected by discretionary immunity.

{¶ 19} Appellants' citation to *Edwards* and *Risner* are inapposite. Those cases dealt with decisions related to maintenance and/or improvement of roadways, matters outside the scope of public duty activities listed in R.C. 2743.01(E)(1). Unlike those cases, appellants' claims in the matter at hand specifically involve the state's activities in licensing and inspecting, conduct squarely within the meaning of public duty under R.C. 2743.01(E)(1). Neither case cited by appellants stands for the principle that the law governing public duty immunity does not apply when considering policies and procedures related to conduct within the meaning of public duty. Appellants' attempts to circumvent public duty immunity by separating the state's creation of policies and protocols about licensing and inspecting from individual actions involved with licensing and inspecting are unavailing.

{¶ 20} The statutory definition of what is encompassed by "public duty" is broad. Public duty "includes, but is not limited to, any statutory, regulatory, or assumed duty concerning *any action or omission* of the state *involving* any of the following: [p]ermitting, certifying, *licensing*, *inspecting*, investigating, supervising, regulating, auditing, monitoring, law enforcement, or emergency response activity." (Emphasis added.) R.C. 2743.01(E)(1)(a). Here, all of the policies and protocols appellants assert ODA failed to create or implement relate to ODA's duties in inspecting and licensing rides, such as the Chaos. Thus, ODA's actions in this case are explicitly defined as public duties, regardless of whether one examines the actions of individual ODA employees in licensing and inspecting the ride at issue, or the acts or omissions in creating or implementing policies and protocols governing licensing and inspecting. *See Vos* at ¶ 13 (finding public duty immunity applied to claims that state agency failed to abide by its own rules when granting permits where no evidence of special relationship existed); *Estate of Tokes v. Dept. of Rehab. & Corr.*, 10th Dist. No. 18AP-723, 2019-Ohio-1794, ¶ 46 (finding that even if common law duty existed, public duty immunity still applied to insulate state agency from liability where no evidence of special relationship existed).

{¶ 21} Furthermore, there is no evidence of a special relationship between ODA and appellants, nor do appellants contend such a relationship exists. As a result, we find the Court of Claims did not err in finding public duty immunity applied pursuant to R.C. 2743.02(A)(3) to bar appellants' claims.

{¶ 22} Dr. Abdou's injury is profoundly tragic. The circumstances in the record surrounding the inspection and licensing of the ride on which he was injured are deeply troubling. Nevertheless, we are constrained by the statutory limitation on the state's liability provided by public duty immunity as established by the general assembly. As we have found public duty immunity applies to ODA's actions in inspecting and licensing the ride on which Dr. Abdou was injured, including their actions or inactions related to policies governing licensing and inspecting, and because appellants alleged no evidence demonstrating a special relationship existed between the parties, we conclude the Court of Claims did not err in granting summary judgment in favor of ODA. Accordingly, we overrule appellants' first assignment of error.

### B. Second Assignment of Error—Discretionary Immunity

{¶ 23} In their second assignment of error, appellants assert the Court of Claims erred by finding their claims were barred by discretionary immunity. Specifically, appellants assert the determination that ODA's "failure to implement a proper inspection protocol constitutes a 'high degree of official judgment,' is not supported by the record of this case." (Appellants' Brief at 43.) In its decision, the court found that with regard to appellants' arguments about ODA's failure to implement certain policies, "there is no genuine issue of material fact that these are basic policy decisions characterized by the exercise of a high degree of official judgment or discretion" such that "to the extent [appellants] seek[] recovery based on these policy decisions, discretionary immunity applies and entitles [ODA] to judgment as a matter of law." (Decision at 8.)

{¶ 24} In our resolution of appellants' first assignment of error, we concluded that public duty immunity applies to ODA's policies governing inspections. As a result, we need not consider whether the Court of Claims erred in its application of discretionary immunity. Accordingly, appellants' second assignment of error is rendered moot.

### C. Third Assignment of Error—Constitutionality of R.C. 2743.02

{¶ 25} In their third assignment of error, appellants assert R.C. 2743.02 is unconstitutional as applied to the facts of this case. Appellants, however, did not advance this argument in the Court of Claims in response to ODA's motion for summary judgment. Issues raised for the first time on appeal are deemed to have been forfeited by failing to assert them before the trial court. *Premiere Radio* at ¶ 7; *J&H Reinforcing & Structural*

*Erectors, Inc. v. Ohio School Facilities Comm.*, 10th Dist. No. 13AP-732, 2014-Ohio-1963, ¶ 19 ("Issues that could have been raised and resolved in the trial court cannot be raised for the first time on appeal. * * * Thus, issues not raised in the trial court are forfeited on appeal."). "[W]hile this court's standard on review on a motion for summary judgment is de novo, that standard 'does not supersede [an appellate court's] settled practice of not addressing issues raised for the first time on appeal.' " *Tucker v. Leadership Academy for Math & Science of Columbus*, 10th Dist. No. 14AP-100, 2014-Ohio-3307, ¶ 20, quoting *Henson v. Cleveland Steel Container Corp.*, 11th Dist. No. 2008-P-0053, 2009-Ohio-180, ¶ 77. As appellants failed to assert their argument regarding the constitutionality of R.C. 2743.02 before the Court of Claims, we decline to consider it for the first time on appeal. Accordingly, we overrule appellants' third assignment of error.

## VI. Conclusion

{¶ 26} Appellants' first and third assignments of error are overruled, the second assignment of error is rendered moot, and we affirm the judgment of the Court of Claims of Ohio.

*Judgment affirmed.*

BROWN and KLATT, JJ., concur.